UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRANSATLANTIC LINES LLC, | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3:06-CV-354 (JCH) |
| | : | |
| UNITED STATES OF AMERICA, | : | MARCH 5, 2007 |
|     Defendant | : | |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 24]**

The plaintiff, TransAtlantic Lines LLC ("TAL"), has asserted breach of contract claims against the defendant, United States of America. TAL has now moved for summary judgment on its claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

**I.  STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all

---

[1] The defendant has also filed a motion for leave to file a sur-reply memorandum [Doc. No. 36]. Because the court considered that memorandum in making this Ruling, the defendant's motion is granted.

1

inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. FACTUAL BACKGROUND[2]

On January 13, 2004, the U.S. Army's Surface Deployment and Distribution Command ("SDDC") awarded a Contract to TAL for the transportation of military cargoes between Norfolk, VA, and Keflavik, Iceland, the location of a U.S. military base. See Plf.'s Loc.R.Civ.P. 56(a)1 Statement ("Plf.'s Stat.") at ¶¶ 2, 4 [Doc. No. 24]. The Contract provided for a base year, expiring on January 12, 2005, and four option years. Id. at ¶ 3. Under the terms of the Contract, TAL must provide transportation services for military or government cargoes using a specific vessel, unless otherwise agreed, and must provide these services on a set schedule, with the vessel sailing at least every 28 days. Id. at ¶¶ 7-8.

The Contract provides for yearly fuel adjustments if fuel prices rise above or below a specified level during contract performance. Id. at ¶ 11. The parties agree that TAL is entitled to a reimbursement for part of the unanticipated fuel cost increases for

---

[2]For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving defendant, where there is evidence to support its allegations.

the shipment of military or government cargoes. Id. at ¶ 12; see also Def.'s Loc.R.Civ.P. 56(a)2 Statement ("Def.'s Stat.") at ¶ 12 [Doc. No. 30]. The dispute between the parties concerns the amount of fuel price adjustments TAL should receive for both the base year and the first option year, and revolves around the correct reading of Section 6.2 of the Contract, which sets forth the Bunker Adjustment Factor ("BAF"). See Plf.'s Stat. at ¶¶ 13-15. SDDC calculated the fuel adjustments reimbursed to TAL for fuel spent in the shipment of government or military cargo only. Id. at ¶ 18.

## III. DISCUSSION

This dispute involves the interpretation of a government contract and is to be decided "under normal principles of contract interpretation." Travelers Cas. & Sur. of Am. v. United States, 74 Fed. Cl. 75, 87 (2006). Questions of contract interpretation are matters of law for the court to decide. Blake Constr. Co. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993). Courts follow the "cardinal rule of contract construction": "the joint intent of the parties is dominant if it can be ascertained." Edward R. Marden Corp. v. U.S., 803 F.2d 701, 705 (Fed. Cir. 1986).

In interpreting a contract, the court begins by looking at the contract's plain language. Forman v. United States, 329 F.3d 837, 842 (Fed. Cir. 2003). It must "interpret the contract in a manner that gives meaning to all of its provisions and makes sense . . . [and t]hus, if the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning,' . . . and the court may not resort to extrinsic evidence to interpret them." McAbee Constr. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (citations omitted). A contract term is unambiguous if there is only one reasonable interpretation. C. Sanchez and Son, Inc. v. United States, 6 F.3d 1539,

3

1544 (Fed. Cir. 1993). The plain meaning of a contract term is "'the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances.'" Travelers Cas., 74 Fed. Cl. at 88 (citations omitted). Furthermore, "provisions of a contract must be so construed as to effectuate its spirit and purpose . . . an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." Gould, Inc. v. U.S., 935 F.2d 1271, 1274 (Fed. Cir. 1991).

Disagreement as to the meaning of a contract term does not necessarily render the term ambiguous. See C. Sanchez and Son, Inc., 6 F.3d at 1544. However, if a contract term does not have a plain meaning, it is ambiguous, and the court must "determine whether the ambiguity is patent or latent." Travelers Cas., 74 Fed. Cl. at 88. A patent ambiguity is one that is "glaring and obvious" on its face, see id., and requires a contractor to seek a clarification from the government before submitting its bid, or otherwise the contractor will assume the risk for any unexpected resulting costs. See P.R. Burke Corp. v. United States, 277 F.3d 1346, 1355 (Fed. Cir. 2002). A latent ambiguity, on the other hand, is one that is not obviously ambiguous but is reasonably susceptible to multiple interpretations, and will generally be construed against the drafter where the non-drafting contractor's interpretation is reasonable. See Hills Materials Co. v. Rice, 982 F.2d 514, 516 (Fed. Cir. 1992).

The relevant provision of the Contract that forms the basis of this dispute is Section 6.2(2)(b), which sets forth the BAF:

> A new average annual fuel price, a dollar differential, and a percent differential

4

> will be computed by the ACO [Administrative Contracting Officer] for the one-year base period of the contract in the same manner as the base period per paragraph (1), above.[3] The dollar differential is the new average fuel price minus the base price. Dividing the dollar differential by the base price derives the percentage differential. If the percent differential is greater than 20 percent, a payment or deduction will be made. If an increase in cost results in payment to the carrier, such payment will be a lump sum. If a decrease in cost results in benefit to the Government, the Government shall set off sums against monies owed the carrier. The dollar payment/set off shall be determined by application of the annual computed dollar differential, less 20 percent, times the total annual fuel consumption (in barrels) for the relevant contract period.

Amended Complaint at Ex. 1, Contract § 6.2(2)(b).

TAL claims that the formula for determining the fuel price adjustment is unambiguous, but that SDDC ignored this "unambiguous formula" and used a different formula, including adding a new data requirement, to determine the amount due TAL. See Plf.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 1 [Doc. No. 24]. The Government explains its fuel adjustment calculations by stating that they include only the cost increases for the shipment of military or government cargoes, and exclude any costs incurred by the shipment of private or commercial cargo. See Def.'s Stat. at ¶ 18. TAL counters that Section 6.2 of the Contract "does not even mention commercial cargo as a relevant factor for the adjustment, nor does it make the quantum of the adjustment contingent upon the percentage of government versus commercial cargo shipped." See Plf.'s Reply at 5-6 [Doc. No. 35]. Moreover, TAL argues that SDDC inaccurately applied the specific method set forth in the BAF clause. See Plf.'s

---

[3]Paragraph (1) of Section 6.2 addresses how the base fuel price will be calculated: "The source of price information is the Bunkerdesk based on the bunker type used by vessel as provided. . . . Upon award of the contract a modification will be issued establishing the baseline price." See Amended Complaint at Ex. 1, Contract § 6.2(1) [Doc. No. 22]. The parties do not dispute the base price calculation.

5

Mem. in Supp. at 5-6.

The court determines that it cannot find as a matter of law that the Contract unambiguously allows TAL to recover for excess fuel costs associated in the portion of shipment that is non-military. The Government's interpretation is not inconsistent with the language and purpose of the Contract, which was to provide transportation services of military cargo between Norfolk, VA, and a U.S. military base in Iceland, on regularly scheduled liner service. Moreover, the parties do not dispute that the vessel was not solely dedicated to the transport of government cargo.[4] Because the court finds that the Contract language does not unambiguously allow TAL to recover for all its excess fuel costs, which was the basis of TAL's argument, it denies TAL's motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, TAL's motion for summary judgment [**Doc. No. 24**] is DENIED. The defendant's motion for leave to file a sur-reply memorandum [**Doc. No. 36**] is GRANTED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 5th day of March, 2007.

                                             /s/ Janet C. Hall
                                             Janet C. Hall
                                             United States District Judge

---

[4] The parties do not dispute that commercial cargo was also transported on a space-available basis. During the base year, 82 % was military cargo. See Def.'s Stat. at Ex. A, at 1.